Dix *v.* Brown.

Let the decree be affirmed.

---

E. F. Dix *v.* Richard R. Brown.

1. INSTRUCTIONS TO JURY: ERRONEOUS WHEN CALCULATED TO MISLEAD AS TO EFFECT OF EVIDENCE.—It is error to give an instruction to the jury which is calculated to mislead them as to the effect of the evidence adduced on the trial.

2. TRESPASS: TORTS: REASONABLE DILIGENCE MUST BE USED TO PREVENT INJURY: REASONABLE DILIGENCE, WHAT.—A party who has been aggrieved by the wrongful act of another, cannot recover damages if he could have avoided the damage by the exercise of reasonable diligence; and by ordinary diligence is meant that degree of care which may reasonably be expected from a person in the situation of the party complaining of the wrong.

3. SAME: SAME: INJURY MUST BE IMMEDIATE AND NECESSARY RESULT OF WRONGFUL ACT.—To entitle a party to recover for an injury resulting from the wrongful act of another, the injury must be the immediate and necessary result of the wrongful act.

ERROR to the Circuit Court of Adams county.   Hon. Hiram Cassidy, judge.

A statement of the case, the evidence adduced, and the instructions to the jury will be found in the opinion of the court.

*W. T. Martin* for plaintiff in error.

*Hewett* for defendant in error.

HANDY, C. J., delivered the opinion of the court.

This action was brought by the defendant in error by attachment against the steamboat Hiawatha, to recover the value of a flat-boat and thirty cords of wood, alleged to have been lost to the defendant in error by the improper conduct of the officers of the boat.

The declaration alleges, in substance, that the plaintiff in the action was the owner of a wood-yard on the Mississippi River, at which he had a flat-boat, loaded with fifty cords of wood, worth three dollars per cord, the wood being piled in the boat on the sweeps or oars used for its navigation, as was customary; that the captain of the steamboat agreed to purchase said wood and to pay the plaintiff three dollars per cord for it; and, in order to receive it, to take the flat-boat in tow of the steamboat up the river, and to transfer the wood to the steamboat; that the flat-boat was accordingly taken in tow for some miles up the river, and part of the wood was delivered to the steamboat, when the defendant suddenly refused to take the remainder of the wood, and maliciously cast off the flat-boat from the steamer, whilst a large portion of the wood was piled up on the oars and sweeps, which left the plaintiff utterly without the means of controlling the flat-boat, and left the boat entirely subject to the current, and it was carried by the current down the river below the wood-yard of the plaintiff, and was finally stranded on the other side of the river, beyond the ability of the plaintiff to recover the boat with any means at his command; and the boat and its contents were irrecoverably lost to the plaintiff.

After the evidence was closed, the court instructed the jury

Dix v. Brown.

at the instance of the plaintiff, to which the defendant excepted, and refused instructions asked by the defendant, to which he also excepted. After verdict for the plaintiff, the defendant moved for a new trial, because : 1. The verdict was contrary to law and the evidence. 2. That the defendant's instructions were erroneously refused. 3. That the court erred in giving the plaintiff's instructions. 4. That the verdict was excessive. This motion was overruled, and exception taken thereto.

The record contains the testimony of several witnesses, on both sides, upon the points, whether the defendant was justifiable or not in refusing to take the wood from the plaintiff's boat ; or in casting off the boat from the steamer in the manner in which it was done ; whether the plaintiff was excusable or not for having the wood piled up on the oars so that they could not be used in navigating the boat when cast off; whether, in fact, the oars were so covered up, and whether the boat might not have been got to shore if the plaintiff's agents in charge of it had used the proper efforts within their power. On these points the testimony is conflicting ; and unless there be error in the record in some other respect, we could not with propriety say that the verdict is not correct.

But the record shows other evidence touching the conduct of the plaintiff after his boat had drifted to the shore, which it is material to take into consideration with reference to the value for which he was entitled to recover, and with reference to the instructions granted and refused by the court.

A witness for the plaintiff testified that after the boat was cast off it floated below his wood-yard and landed on the opposite side of the river, about half a mile below a point immediately opposite his wood-yard, where it was made fast; that he told the plaintiff the next day where she was, and he said he would have nothing more to do with her, and would not bring her back ; and that there would have been no difficulty in a steamboat towing her up to plaintiff's landing. The plaintiff testified that he knew the next morning after the boat was landed that she was there ; that she was worth $250, and the wood $3 per cord.

Henderson, a witness for the defendant, testified that the plaintiff's boat lay on the opposite side of the river about a week, and that the witness got a steamer to take it in tow and to land it a short distance above the plaintiff's wood-yard on the same side of the river.    There were twenty-seven cords of wood on the boat at that time, which witness sold to the steamer which towed the boat over for $81, which sum he holds to be paid to the party entitled to it; and that when the boat was being towed over, and past the plaintiff's wood-yard, some persons in witness's charge hailed the people at plaintiff's wood-yard, and two persons came up from the wood-yard and received the boat.    The boat was then sound and did not leak, and was worth $200.

The first witness for the plaintiff testified that he afterwards saw the boat, in June, 1860, six miles below, used as a wood-boat.

Several grounds of error are insisted on, in behalf of the plaintiff in error; but the merits of the case, as it is now presented, may be sufficiently determined by considering the instructions granted at the instance of the plaintiff, and those asked on behalf of the defendant and refused.

At the request of the plaintiff, the court gave the following instruction: "To constitute a delivery or tender of the boat and wood, or either of them, to the plaintiff, it must be proved, in the case, that such delivery or tender was made either to the plaintiff in person, or to some person proven to the satisfaction of the jury to have been authorized by the plaintiff to act for him in this matter."

This instruction proceeds on the idea that the plaintiff had been illegally deprived of the possession of his boat, or that it had been illegally taken out of his possession by the defendant; for upon no other view would the rules in relation to tender or re-delivery, referred to in the instruction, have been pertinent.    But there is, no evidence tending to show that the boat was ever in possession of the defendant, or was ever out of the legal possession of the plaintiff; and, of course, the rule in relation to tender or re-delivery of the possession to him had

no application to the case. It was calculated to mislead the jury with reference to the effect of the evidence, and it was error to give the instruction. .

The following instructions, asked by the defendant, were refused: "If the boat and wood were, by the proof, shown to have been lost to Brown, only because he failed to make any exertion to save them, and if the proof shows that he could easily have saved both, then the jury should not find damages for the value of the boat and wood."

"If the proof shows that the wood-boat and wood were safely landed by the plaintiff at Black Hawk, and were then uninjured, and plaintiff abandoned the boat and wood, and this when he could easily have recovered the boat and wood, then the jury will find for plaintiff only such damages as he sustained by having his boat and wood turned loose, and the value of the wood taken by the Hiawatha out of the boat, and interest, and such further sum as would have compensated him for the labor of recovering the boat and wood." .

The former of these instructions appears to look as well to the failure of the plaintiff to make any exertion to save the boat from drifting past his wood-yard, before she reached the shore, as to his failure to get her back after she was landed. The latter has reference to his conduct after the boat was landed. They both present the question, whether a party, who has been aggrieved by the wrongful act of another, can recover damages to an extent which he could have avoided by ordinary diligence?

The rule on the subject is thus stated by Baron Parke in *Bridge* v. *The Grand Junction Railway Co.*, 3 Mees. & Welsb. 244: "Although there may have been negligence on the part of the plaintiff, yet, unless he might, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence, he is entitled to recover; if, by ordinary care, he might have avoided them, he is the author of his own wrong." And "ordinary care" is said to be that degree of care which may reasonably be expected from a person in the plaintiff's situation. *Lynch* v. *Nurdin*, 1 Ad. & Ell. 36 (41 Eng. C. L. R.).

Again, it is laid down that, in the absence of ordinary care on the part of the plaintiff, the case will fall within the general rule, that no one can maintain an action for a wrong where he has consented or contributed to the act which occasions his loss. Per Tindall, Ch.J., in *Gould* v. *Oliver*, 4 Bing. N. C. 142, 33 Eng. C. L. R.; and that no man can, in any case, be allowed to recover compensation for damages resulting from his own misconduct or negligence. *Brown* v. *Maxwell*, 6 Hill (N. Y.), 592.

These are familiar principles, and they appear to be applicable to the facts of this case, as they are presented in the record.

In the first place, there is evidence upon the point that the plaintiff, by proper exertions, might have saved his boat from being drifted down the river and past his wood-yard. It is true, there is evidence tending to support the contrary view. In such a state of case, it was for the jury to weigh the evidence and to find their verdict, as they might give weight to the witnesses for the plaintiff or for the defendant, on the point, after being instructed by the court as to the rule of law upon which they should act in finding their verdict. The first instruction asked for the defendant and refused, we think, correctly stated the rule by which the jury should have been governed in their verdict, and it should have been given.

In the next place, the evidence tended very clearly to show that the plaintiff, through his agent, landed the boat on the opposite side of the river, safe and sound; that he had notice of this the next morning, and then refused to have anything further to do with the boat; that he might have had her brought back to his wood-yard with but little expense and delay, and without injury to her or loss of the wood; and that she was actually brought up and delivered to his agent near his wood-yard by another person, but was not received by him. If the jury believed these facts to be established by the evidence, it showed a voluntary abandonment, on his part, of his boat, which remained in his possession after the wrong was done of casting her off by the steamboat; and according to

the principles above stated, this conduct was in his own wrong. It showed clearly that if the boat and wood were lost, it was the direct result of the failure of the plaintiff to take ordinary care of his property, which remained in his possession, uninjured, after the wrong done by the defendant in casting her off; and he was clearly not entitled to recover the value of the boat and of the wood remaining on her, because that loss, in this view of the evidence, was occasioned by his own wrong, for which the defendant was not responsible.

The injury sustained in the loss of the boat and the wood was separate and independent of the wrongful act of the defendant in casting off the boat, and not the necessary and natural consequence of that wrongful act, and hence is not chargeable upon the defendant.

In order to entitle a party to recover for an injury flowing from a particular wrongful act, it must be the immediate and necessary result of that act. Mayne on Damages, 14, 15. It is plain here that the loss of the boat and wood was not the natural and reasonable result of the defendant's wrongful act; for both the boat and the wood were safe and sound in his possession, after the defendant's wrongful act was completed.

Again, though remotely arising in consequence of the defendant's act, when caused wholly or principally by the plaintiff's act, it cannot be regarded as the necessary result of the defendant's misconduct. Thus, a party having been wrongfully imprisoned by the captain of a ship, and after being released, changed into another ship, sued to recover the costs incurred by the change; and it was held that he could not recover for these costs. Lord Ellenborough said the special damage should be closely connected with the trespass which was the foundation of the action. Here the imprisonment was not the *causa proxima* of the transhipment. *Boyce* v. *Bayliffe*, 1 Camp. 58. In another case, the plaintiff had taken passage to Australia in the defendant's ship, but was not allowed to sail, under the mistaken belief that he had not paid his entire fare. The error was immediately discovered, and he was offered a passage in another vessel which sailed a week after the first. Instead of

going by it, he remained in England a considerable time, to sue the defendant. It was held that the expenses of his keep till trial could not be allowed as damages, since he might have gone long before, if he had wished. Mayne on Damages, 21.

The second instruction was, therefore, correct, and should have been given.

The verdict of the jury gave the plaintiff the value of the boat and of the wood, which was doubtless the result of the refusal of the instructions asked by the defendant.

The judgment must, therefore, be reversed, the verdict set aside, and the cause remanded for a new trial.