## VICKSBURG & MERIDIAN RAILROAD COMPANY v. JOHN WILKINS.

1.—RAILROAD COMPANIES — LIABILITY FOR PHYSICAL INJURY TO EMPLOYE.—For any injury resulting to railroad employé through gross negligence or carelessness, or want of ordinary care on the part of the company alone, recovery may be had; but otherwise, if the employé himself is at fault.

2.—SAME.—Discussion of authorities and general principles applying to cases of injury to employé, including waiver and contributory negligence.

ERROR to the circuit court of Rankin county. MILLSAPS, J.

The opinion of the court contains a full statement of the case.

The following errors are assigned:

1. The record does not show that the jury in the case was ever sworn to try the issue joined between the two parties.

2. The record does not show that there was a verdict rendered by the jury in favor of the defendant in error on the issues joined.

3. The judgment of the court below is not sustained by any verdict of the jury on the issue joined.

4. The court erred in giving instructions for defendant in error, and in refusing the 2d, 5th, 8th, 17th, 18th, 19th, 20th, 21st and 22d instructions asked by plaintiff in error on the trial of the case in the court below.

5. The court erred in overruling the motion for a new trial.

*Nugent & Yerger*, for plaintiff in error.

1. The railroad company is not responsible for resulting damages. Shearm. & Redf. on Neg., §§ 62, 63, 64, and cases cited in note; New Jersey Ex. Co. v. Nichols, 33 N. J. 434; Gaynor v. Old Colony R. R. Co., 100 Mass. 108.

2. The defendant, being fully aware of all the defects in the engine, took the risk of injury upon himself, and cannot recover. Gilman v. Deerfield, 15 Gray, 577; 48 Me. 113; R. R. Co. v. Hazzard, 26 Ill. 373; Shearm. & Redf. on Neg., § 92, *et seq.*, and cases cited; 9 Exch. 223; 5 Ohio St. 541; 15 D. 818; Hay. 168; 3 Hurlst. & N. 648.

3. The first instruction to the jury, that, to absolve the company from liability, there must have been gross negligence on the part of Wilkins, contributing to the injury, is not the law. Shearm. & Redf. on Neg., §§ 2, 8, 28, 29, 32, 33, 34, 37; Runyon v. Cen R. R. Co., 1 Deutch. 586; Williams v. Mich. Cen. R. R. Co., 2 Mich. 259; Duggins v. Watson, 15 Ark. 118.

4. The second instruction is alike objectionable. The

duty devolved upon railroad companies is to use ordinary care and negligence, to procure safe and reliable machinery on their roads, and not to do this at all events.   Certainly an employé injured by defective machinery is not entitled to recover on this ground alone.   Whatever the duties as to third parties may be, the rule as to employees is more restricted.   Shearm and Redf. on Neg., § 92.

5. The third, fourth, fifth, sixth, seventh, tenth and eleventh instructions are not law.   The rule is otherwise well settled.   The fireman and engineer on a train are fellow servants.   If any other rule be adopted, railroads are a failure.   Shearm. & Redf. on Neg., § 100, *et seq.*; Hand v. Vermont & Canada R. R. Co., 32 Vt. 473.

6. No propositions of law are better settled than those announced in the instructions asked by the defendant and refused by the court.   Shearm. & Redf. on Neg., § 86; Caldwell v. Brown, 53 Penn. St. 453; Fertham v. England, Law 29 B. 33; Rohback v. Pacific R. R. Co., 43 Mo. 193; 38 N. Y. 442; 24 Md. 84; 55 Penn. St. 460.

7. It is apparent from the evidence that Wilkins, by the exercise of ordinary care, could have avoided the consequence of the company's neglect in retaining the engine in service.   Dix v. Brown, 41 Miss. 135; Railway Co. v. Whitton, 13 Wall. 276–8, 290.   The court below, in justice to its own ruling and the evidence in the cause, should have set aside the verdict and granted a new trial, especially when it failed to nonsuit the plaintiff, which was its plain duty.   33 N. J. 434.

7. On the point as to the sufficiency of the verdict, see Kerr v. Hawthorn, 4 Yeates, 295 ; Porter v. Rummey, 10 Mass. 64 ; Bac. Abr. *passim;* Bouvier's Law Dic., title " Verdict."

*W. B. Shelby*, for defendant in error.

1. It was the duty of the company to furnish safe

and good machinery; and if defendant in error was injured because of defective machinery, the company is liable. Mad River & Lake Erie R. R. Co. v. Barber, 5 Ohio (N. S.) 564; Saund. on Neg. 125, 126; 1 Redf. on Railw. (4th ed.) 518, note 2, 520, note 16, 524, 525, 529, and note 530 and note 531; Gibson v. Pacific R. R. Co., 46 Mo. 163; Noyes v. Smith, 28 Vt. 63; McGatrick v. Wilson, 4 Ohio, 566.

2. If the defendant in error was under the control of the engineer, and was injured while doing that which the engineer ordered him to do, the plaintiff in error is liable. 1 Redf. on Railw. 526; Salor v. Chicago, Burlington & Quincy R. R. Co., 52 Ill. 401; 4 Am. Rep. 616.

3. As to defendant in error continuing in the service of the company after knowledge of defects in the machinery, see 1 Redf. on Railw. 518, note 2, 520, 524, and note 16.

4. Even if Wilkins was negligent, which is not shown by the proof, yet, unless such negligence was the direct and proximate cause of the injury, he may recover. Sedg. on Dam. (5th ed.) 536; Saund. on Neg. 55, 59.

5. This is a case sounding in damages, and the law does not, and cannot prescribe any positive rule to regulate the measure of damages. It is left entirely to the discretion of the jury, and unless that discretion is so grossly abused as to show passion, prejudice, partiality, or corruption, the verdict will not be disturbed. N. O. J. & G. N. R. R. Co. v. Hurst, 36 Miss. 660; M. & O. R. R. Co. v. Whitfield, 44 ib. 466.

TARBELL, J.

John Wilkins, being an employé of the Vicksburg & Meridian R. R. Co., suffered a serious injury in his person while so employed, to recover damages for which he brought suit in the circuit court of Rankin county. A trial was had at the August term thereof, 1872, resulting in a verdict of ten thousand dollars for

the plaintiff. A motion for a new trial was overruled, when a writ of error was prosecuted to this court.

The facts elicited on the trial do not appear to be seriously disputed. We quote the evidence nearly entire as set forth in the record. The injury was described by Dr. Craft, who testified that the wound was in the urethra, resulting in a hole, which he considered permanent, between the anus and privates; that if plaintiff should have a bowel disease, owing to the character of the wound, it would be aggravated, and he would be unable to control his bowels; that a venereal disease would go harder with him than with others not so injured; yet, that he might go through life and live to a good old age without any serious inconvenience from it; that it was his impression the plaintiff would never be able to beget children.

The plaintiff, in his own behalf, testified that he was in the employ of the railroad company as fireman; that the injury occurred on the morning of July 15th, 1869, at the Brandon depot; he was employed on a ditching train, which did not run on schedule time, a much easier and a more desirable birth than on the regular trains; on the morning of the injury he went to fire up the engine, which was the "Louisiana;" when she had on 45 or 50 pounds of steam he discovered the throttle valve open, which he screwed up and closed, but knew that a part of the thread on the screw was broken off and it would not hold; he then proceeded to fix the bolt in the cellar box; when in front of the bumper and stooping to fix the bolt, the engine moved and caught the witness between the bumper and a flat car standing a few feet in front on the track, inflicting the injury described by Dr. Craft; the engine had no pilot or "cow-catcher," and the brake was defective; it was notorious to the employés that the throttle valve leaked; the defect in the throttle valve was the cause of her moving that morning; he did not examine to see whether

the reverse-lever was in the middle or centre notch; when in the top notch, though the throttle valve might be open, the engine would not go far; whether in the top notch or not the engine would move if the throttle valve was open; it was the duty of the fireman to obey the engineer; O. Miller was engineer, competent, skilled and sober; witness had oiled the machinery before attempting to fix the key in the cellar bolt; the flat car was about five feet from the engine; he went forward when he discovered the engine was moving, and was caught, as already described; the engine was in bad order; it was the duty of engineers to report defective engines to the master machinist at Vicksburg, whose duty it is to repair them; the "Louisiana" had been reported; he was confined and helpless for five months; after his confinement he went back in the employ of the company and got his former wages; during his confinement the company paid him two months wages; he is now receiving $65 per month on a railroad; he applied to the president of the V. & M. Railroad Company for a light position, which was refused; he then asked to have his doctor's bills paid by the company, which was refused, he stating at the time that he did not want any damages; this was declined and he soon after brought this suit, when he was discharged. On cross-examination the witness stated that the cellar box was eight inches from the ground; the bumper was three and a half feet high from the ground; the cellar box was about four feet from the point where he was hurt; the distance between the wheels of the engine is five feet; the cellar box is four or five inches from the wheel; his back was turned to the flat car; it was not his duty to notice the lever; if it had been in its proper place, the engine might have moved a little, but not much; it was the duty of the engineer to fix the lever in the right notch; had been on the road about two years; the ditching train was for the accommodation of the

hands on the road; he knew that with 45 or 50 pounds of steam on, the engine was liable to run off; he could have quit the service of the road; he never reported the engine; if he had, he might have been cursed and discharged; as he had to make a living, he continued in such service, and did not want to be discharged; it was his duty to fix the bolt in the cellar box; he had to do what the engineer told him or he would not have had him; he could have laid down and fixed the cellar bolt; the firemen are completely under the control of the engineer.

The engineer testified, that he was a practical engineer; was so employed by the V. & M. R. Co. when Wilkins was hurt; he put up the engine the night before in good order, with the reverse lever in the top notch; when he reached the engine after the accident, he found the lever at half stroke and the throttle valve half open; the cause of the engine moving was that the throttle valve was open; which was from its defect; it was his custom, but not the orders of the company, for the fireman to oil the machinery; if in so doing he found any bolts out of place, it was his duty to put them in place; if he reported any out of place, witness ordered him to fix them; he was on that engine three or four months before the injury; she was not safe and reliable; if the reverse lever was in the centre notch, and the throttle valve open, she would move two or three feet back and forth; he continued on that engine after the accident; the plaintiff was doing what witness required of him when hurt.

On cross-examination this witness stated, that with careful management this engine was safe enough; she was good and safe enough for ditching purposes; he did not report the engine as defective; the plaintiff and all others on the train knew the throttle leaked; the company did not, but witness did require the fireman to fix the cellar bolt; according to contract it was more

the duty of the engineer to fix the cellar bolt than the fireman; the throttle was safe with ordinary care and management; he put up the engine the evening before with the lever in the centre notch, and fixed right to prevent her from moving; a man of ordinary prudence would have examined to see if the reverse lever was all right before fixing the cellar bolt; plaintiff knew enough about the engine to know if the throttle valve flew open she would move; the engine was not entirely safe, but with proper brake could not have moved; if witness was going to fix the cellar bolt he would examine the reverse lever; the plaintiff knew of the loss of the brake; no man of ordinary prudence, knowing the defect in the valve and brake, as plaintiff did, would have gone when plaintiff did, without fixing the engine so she could not move; engineers and firemen frequently take the precaution to scotch the wheels so the engine cannot possibly move; the defects in this engine were known to all the employees, and were the subject of conversation among them.

Henry Wilkins testified, that he ran on this engine as engineer when it was on the accommodation train; the engine was defective, and he reported her to the master machinist, who took her off the regular train and sent her to Brandon on the ditching train; had been in the employ of the company eight or nine years as fireman and engineer; considered the engine unsafe; he knew a new engine to move off with the reverse lever all right in the centre notch; the Louisana started with him once before the plaintiff was hurt, because the throttle leaked.

On cross-examination this witness testified, that if the throttle of the Louisiana engine was shut exactly right, she was safe; she was an old and unsafe engine as all the employees knew; he had reported this engine five years before to the master machinist; he had never

warned the plaintiff, who was his brother, of the danger that the throttle leaked.

Jacob Hurtzell testified, that he was fireman on the engine Louisiana for three or four months after the plaintiff was hurt; and Miller continued on her as engineer; neither Miller nor himself reported her; she was not dangerous with proper care; no man of ordinary prudence would have done as plaintiff did, in attempting to fix the cellar bolt without scotching the wheels to prevent the moving of the engine.

On cross-examination this witness stated that an engine with a throttle that leaks will move with the lever in the centre notch; it was a matter of choice whether firemen oiled or not; witness succeeded Wilkins as fireman on the Louisiana; he was before then on a passenger train; after Wilkins was hurt he applied for and obtained his place, because it was an easy place, at the same wages; with careful management this engine was not dangerous; when he went under her as plaintiff did, he put wood under her wheels, which insured his safety; he is now an engineer.

The plaintiff was recalled and testified further, that he went upon the engine and found the throttle valve open, and turned the thumb screw to fasten or close it, but the thread of the screw was partly gone, and he did not believe it would hold; this was just before he went to fix the cellar bolt.

This was all the testimony in the case, and may be epetomized thus: Wilkins, the plaintiff in the action, was a fireman on the engine Louisiana, in the employ of the defendants, the V. & M. R. R. Co., and had been so employed for about two years; that the said engine was defective and was known to be so to Wilkins and all the employees on or about said engine; that the defects in said engine which led to the accident and which were known to Wilkins, consisted of a throttle valve, which

leaked and was liable to fly open, and the absence of a brake, in consequence of which, the engine was likely to "run off;" but these defects and this liability of the engine to run off could be prevented by proper caution and prudence; that on the morning of July 15, 1869, Wilkins went to the engine to fire up, oil the machinery, and otherwise to put the engine in order for the work of the day; that, among the precautions necessary to insure the engine against starting, were, to see that the reverse lever was in its proper place, in the centre or top notch; to "scotch" the wheels; and to fix the cellar bolt from the outside and not from the front of the engine. These are simple rules, as given by the witnesses, but a fourth, not mentioned in the record, seems, apparently, still more simple and effective, viz.: to fix the cellar bolt in the morning, preparatory to the day's work, before firing up. None of these precautions were observed; but, first proceeding to fire up, and when there were 45 or 50 lbs. of steam, the fireman went to the front of the engine, and with his back to a flat car a few feet from the engine, stooped down to adjust the key to the cellar box, when the engine started off; the fireman, instead of stepping sideways off the track, backed up and was caught between the bumper of the engine and the flat car, whereby he was seriously injured. Thereupon, he instituted this suit against the railroad company to recover damages for the injuries thus sustained. The instructions of the court to the jury, on the trial, are too numerous to be given here, and are, in fact, unnecessary to a determination of the rights of the parties.

The right of an emyloyé of a railroad company to recover damages of the company for injuries while so employed, though familiar to the courts of other states, is for the first time before the courts of Mississippi.

In support of the liability of the company, it is contended,

1st. That, "it was the duty of the company to furnish safe and good machinery, and if defendant in error was injured because of defective machinery, the company is liable;" and upon this point we are referred to 5 Ohio St. 564 ; 1 Redf. on Railw. 518, 520, 524, 525, 529, and notes ; Story on Agency, 530, 531, 532, 533, and note ; 46 Mo. 163; 28 Vt. 63 ; 4 Ohio, 566 ; Saund. on Neg. 125, 126.

2d. "If the defendant in error was under the control and direction of Miller the engineer, and was injured while doing that which Miller ordered him to do, the plaintiff in error is liable;" citing, 52 Ill. 140 ; 1 Redf. on Railw. 526.

3d. "As to defendant in error continuing in service of plaintiff in error after knowledge of defects in machinery, see 1 Redf. on Railw. 518, note 2 ; ib. 520, 524 and note."

4th. "Even if Wilkins was negligent, which if not shown, by the proof, yet, unless such negligence was the direct and proximate cause of the injury, he may recover. Sedg. on Dam. 563 ; Saund. on Neg. 55, 56, 57, 58, 59.

Turning to the authorities to which our attention is invited, we find that the Mad River & Lake Erie R. R. Co. v. Barber, 5 Ohio St. 541, was an action by the conductor against the company, on whose trains he was running, to recover damages for injuries received, on the ground that the injury was the result of the insufficiency of the cars, and defects in the machinery and fixtures of the train. The court say : "It was the duty of Barber, as the conductor of the train, to use ordinary and reasonable skill and diligence on his part, not simply in the management of the train, but also in supervising the due inspection of the cars, machinery and apparatus, as to their sufficiency and safety while under his charge ; and on the discovery of any defect or insufficiency, to notify the company, and to take the proper precaution

to guard against danger therefrom. And if he was injured by the negligence of the company in furnishing, or continuing to use, defective cars and machinery, yet, if his own neglect of duty in the management of the train, or due inspection of the cars and machinery in his charge, contributed as a proximate cause of the injury, he could have no right of action against the company for damages; or, if he knew of the defects and insufficiency of the cars or machinery, and, without taking the necessary and proper precaution to guard against danger, continued to use them, he took upon himself the risk, and waived his right as against the company. If there was no neglect of due and ordinary care and diligence, on the part of the company, furnishing or continuing the use of the cars and machinery, and the injury was caused by latent defects, unknown alike to the company and to the conductor, and not discoverable by due and ordinary skill and diligence in the inspection of the cars and machinery, it would be a misadventure falling among the casualties incident to the business, and for which no one could be blamed." Again : "It appears that a principal is liable in damages for an injury sustained by his agent or employé while in his service, only when the injury is the result of an omission of that reasonable and ordinary care on the part of the principal himself, in the discharge of his duty, which persons of ordinary prudence are presumed to exercise in that particular pursuit. Where, therefore, an agent or employé of a railroad company has been injured by means of the neglect of ordinary diligence and care on the part of the company, either in not employing a sufficient number of hands to manage and safely run a train, or in employing, or continuing in the employment of the company, incompetent and unsuitable persons, or in not keeping the road in repair, or in providing the road with insufficient, defective and unsafe machinery and cars, in either case the company is

liable.  But the company would not be liable, even in such case, providing the agent or employé was himself guilty of neglect or misconduct at the time, which contributed to the injury, or providing the agent or employé with a full knowledge of such omission of duty or neglect on the part of the company, waive the matter by continuing in the service of the company, without taking the precaution, or using his exertions, to have the omission or difficulty remedied.  For, if the agent or employé of the company waive the omission of duty on the part of the company, he takes the risk upon himself, and, if damaged, he must abide by the maxim, " *volenti non fit injuria*."  And again:  " It is an old and settled rule of the common law, that no one can maintain an action for a wrong where he has consented or contributed to the act which has occasioned it."  The case of Gibson v. the Pacific R. Co., 46 Mo. 163, was an action by a brakeman to recover damages for injuries received while coupling cars, which was a part of his duty.  He was acting at the time under the immediate orders of the conductor.  The machinery was defective and dangerous, and so known to the company, but unknown to the brakeman, who was a careful and prudent man.  The facts are, therefore, unlike those in the case at bar, and there is nothing in the doctrines announced contrary to Barber's case, *supra*.  Noyes v. Smith & Lee, 28 Vt. 59, was on demurrer.  The declaration averred that the plaintiff was hired by the defendants to have charge of and conduct and run an engine, and that by virtue of said employment, it became the duty of defendants to furnish an engine that was well-constructed and safe, etc.; but that they carelessly and wrongfully furnished an insufficient engine; that the insufficiency was unknown to the plaintiff; and, but for want of proper care and diligence, would have been known to the defendants; and that while the plaintiff was careful and prudent in the use of said engine, it

exploded on account of such insufficiency, and injured the plaintiff. *Held*, the declaration disclosed a sufficient cause of action. In McGatrick v. Mason, 4 Ohio St. 566, the court say: "The general rule is, that an employer who provides the machinery, and oversees and controls its operation, must see that it is suitable; and if an injury to the workmen happen by reason of a defect unknown to the latter, and which the employer, by the use of ordinary care, could have cured, such employer is liable for the injury." McGatrick was the hired man of Mason, employed at the time of the injury outside his usual employment, in assisting Mason to put on board a vessel heavy freight, by means of machinery which was defective and dangerous, unknown to the servant, but was known to, or might have been known to, the master by use of ordinary care. Lalor v. C. B. & Q. R. Co., 52 Ill. 401, was this: Lalor was a laborer for monthly wages, employed about the depot grounds and freight house of the company, for the special purpose of loading and unloading freight cars; while so employed he was ordered by the superintendent of the company, employed to manage, direct and superintend the business of the company about the depot, to couple and connect a freight car with others attached to a locomotive, contrary to the special agreement of the servant, to do which he was inexperienced, and which fact was known to the superintendent; and while so engaged the engine was so carelessly managed as to crush Lalor to death. The action was instituted by his widow under a statute of Illinois. There was a demurrer, and the court held the "sphere" of Lalor "was a special one, and so subordinate as to compel him to yield implicit obedience to the command of the superintendent." The company, say the court, "was constructively present, by and through this officer, and must be charged accordingly. It was, then, by direct command of the company the deceased was exposed to this peril, and one out of the line of business

he had contracted to perform.   He was killed by the
negligence of the driver in charge of the locomotive,
while thus exposed."   The court proceed to say: "We
place this case on the ground of misconduct of the com-
pany in exposing the deceased to this peril, and when
so exposed, in so carelessly mismanaging the engine as
to cause his death.   It is needless, in this view, to con-
sider or comment upon the numerous cases cited.   None
of them meet this case."   In the conclusion of that case
it is added: "It may not be improper to remark, there
is a defect in the declaration; on which, however, no
point has been made, and that is, the absence of any
averment that deceased, while coupling the cars, used due
care and caution."   In the Little Miami R. Co. v. Ste-
vens, 20 Ohio, there was a change in the time of start-
ing and running the trains, of which the conductor had
notice, but which was unknown to the engineer.   There
was a collision by which the engineer was injured, to
recover damages for which, he prosecuted the company.
It appeared on the trial that it was the duty both of the
company and conductor to furnish the engineer with a
card informing him of the change of schedule.   The action
was sustained, and the doctrine of that case was affirmed
in the C. C. & C. R. Co. v. Keary, 3 Ohio St. 201,
"upon the ground that the injured agent or employé, at
the time of the injury, was acting under the immediate
control and direction of his superior, by whose neglect
the injury was received, and thus occupied a position
which precluded him, for the time being, from exercising
his own discretion in looking to and providing for his
own safety."

The marked difference between the case at bar and
the basis of the adjudications from which we have
quoted, is too distinct to need special reference; and the
rules stated by the text writers seem only to present in
clearer contrast the dissimilarity already observed.   It
is conceded, that if there be any fault in the selection

of the other servants, or in continuing them in their places, after they have proved incompetent, perhaps, or in the employing unsafe machinery, the master will be answerable for all injury to his servants in consequence; 1 Redf. § 131, 2; but this is qualified by the rule, that if the servant knew of the incompetency of the other servants, or of the unsafe machinery, and continue his service, he cannot recover. Ib., note 2. This, again, has its qualifications, depending upon the knowledge and diligence of the master; as, also upon the knowledge and diligence of the servant; ib. *et seq.;* 2 Hill. on Torts, 467; as in the case at bar. These rules are again subject to modification by the direct and personal interference of the principal or his representative, in directing the servant to perform service in a prescribed manner; 1 Redf. 520, § 131, *et seq.;* as, when the employé, at the time of the injury, acts under the immediate control and direction of his principal, or of a superior representing the principal, by whose neglect the injury is occasioned. 3 Ohio St. 201. And when the gross negligence of the defendant will render him liable, notwithstanding the negligence of the plaintiff. See Sedg. on Dam. 543, which is not the case at bar.

The principles discussed in the foregoing adjudications are variously stated by text writers and eminent jurists. Sedgwick, on Damages, quoting with approval Starkie on Evidence, gives this rule: " In an action for an injury occasioned by the negligence of another, it is a good defense to show that the injury so far arose from the negligence of the plaintiff himself, that he might by ordinary care and caution have avoided the injury." Sedg. on Dam. 103. " So in case, though the party charged be in fault, yet, if the proximate and immediate cause of the accident be the unskillfulness of the plaintiff, there is no relief." Ib. 104. Lord Ellenborough in Butterfield v. Forester, 11 East, said: " A party is not to cast himself upon an obstruction which has been

made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right; one person being in fault will not dispense with another using ordinary care for himself." He also cited Sedg. on Dam. (4th ed.), 539, and cases cited in notes. Also Sher. & Redf., pp. 23, 34, § 34, *et seq.;* ib. p. 546, § 487, *et seq.;* 1 Redf. 520, *et seq.;* where these rules are reiterated and the authorities cited.

It is not, however, our purpose to adjudicate these rules further than is necessary for the determination of the case at bar. The fireman was firing up, oiling the machinery, etc., in the absence of the engineer. He was not performing this service under the immediate supervision of the engineer, and in the manner prescribed by him, but was at liberty to exercise all the care and prudence, and observe every precaution of which the service was susceptible. He could have adjusted the cellar bolt before firing up, or from the outside of the engine, without going upon the track in front; he could have stepped aside, off the track, instead of backing up to the car, between which and the engine he was caught and injured ; he could have examined and adjusted the reverse lever ; and he might have placed blocks of wood under the wheels, which would have secured the engine against all possibility of moving. The engineer was not present, requiring this service to be performed without these precautions. If he were, a more formidable question would be presented, not now involved. The fireman was alone, his own master, free to perform the service in any mode most agreeable to himself. Assuming the evidence in the record to be undisputed, he chose to conduct this duty in a most gross and reckless disregard of his own safety, in the face of known and notorious danger. Unless the Vicksburg & Meridian Railroad Company guarantees employés against their own negligence and folly, the company cannot be made liable upon the facts presented in the record.

The case at bar does not present the simple question of the liability of a railroad company for injuries to a servant caused by the negligence of a fellow servant; nor are many other intricate questions growing out of relations of railway companies and ther employés; particularly the modification sought to be established by the courts of some of the states, to the effect that the rule of non-liability for injuries to servants through the negligence of fellow servants, does not apply when the injury is to one acting in a subordinate position in obedience to the directions of a superior, representing the company, is not involved. But the case on the facts is resolved into this: The company was in fault in furnishing defective and unsafe machinery, but which was manageable and safe by care and prudence. The employé, knowing the character and peculiarities of the engine, and how to obviate its defects, and guard against accidents therefrom, so culpably and grossly disregarded every prudential measure, if the evidence in the record is conceded to be unquestioned, when acting upon his discretion and judgment, in the absence of his superior, and of all other employés and representatives of the company, as to have been the immediate and direct cause of the injury which befell him. Such a case is within old and well established rules of justice, familar as among the fundamental principles of the common law. No rule is better settled, than that, to entitle the plaintiffs to recover for injuries caused by the negligence of another, he must show the injury to have been attributable to the imprudence of the defendant, and under such circumstances as to exonerate himself from all neglect of duty on his part. Parker v. Adams, 12 Met. 415. This rule is thus referred to in Dix v. Brown, 41 Miss. 131: "They both present the question" (reference being made to the instructions by the court), "whether a party, who has been aggrieved by the wrongful act of another, can recover

damages to an extent which he could have avoided by
ordinary diligence?" "The rule on this subject is thus
stated by Baron Parke in Bridge v. the Grand Junction
Railway Co., 2 Mees. & Wels. 244: 'Although there
may have been negligence on the part of the plaintiff,
yet, unless he might, by the exercise of ordinary care,
have avoided the consequences of the defendant's neg-
ligence, he is entitled to recover; if, by ordinary care,
he might have avoided them, he is the author of his
own wrong.' And 'ordinary care' is said to be that
degree of care which may reasonably be expected from
a person in the plaintiff's situation. Lynch v. Nurdin,
1 Ad. & Ell. 36 (41 Eng. C. L.). Again, it is laid
down, that, in the absence of ordinary care on the part
of the plaintiff, the case will fall within the general
rule, that no one can maintain an action for a wrong
where he has consented or contributed to the act which
occasions his loss. Per Tindall, Ch. J., in Gould v.
Oliver, 4 Bing. (N. C.) 142 (33 Eng. C. L.); and that no
man can, in any case, be allowed to recover compensa-
tion for damages resulting from his own misconduct or
negligence. Brown v. Maxwell, 6 Hill, (N. Y.) 592.
These are familiar principles, and they appear to be
applicable to the facts of this case, as they are pre-
sented in the record." All of which is peculiarly
"applicable" to, and conclusive of the case at bar.
See, also, 31 Miss. 156; 44 ib. 466; Sedg. on Dam. (4th
ed.) 539, and cases cited in notes. The rules referred
to in support of the recovery in this case are primarily
correct; but, as we have shown, they are subject to
qualifications, and these qualifications, as it further
appears, are fatal to the right of action herein. We
have thus given to this case much more consideration,
and have quoted more extensively from the authorities,
than its intrinsic merits demand. Indeed, throughout
the investigation, we have been constantly surprised at
the result reached in the court below, in view of the

law and the facts. In point of number, the instructions were seriously objectionable. To what extent those for the plaintiff are erroneous, and which of those for the defendant refused ought to have been given, may be learned from this opinion. The jury must have misunderstood or misconceived the law of this case, if not the facts.

*Judgment reversed and cause remanded.*