## MEMPHIS & CHARLESTON RAILROAD CO. vs. J. J. THOMAS.

1. RAILROAD: *Liability of employés; Contributory negligence.*
   T., an engineer on the M. & C. R. R., was in charge of a train that ran off at a switch, and seriously injured him.   At the time of the accident, the train was running at the rate of ten miles an hour.   The rules of the company

required all trains to slacken their speed to six miles an hour when pass-
ing a switch. *Held*, that T., the engineer, directly 'contributed to the
accident by which he was injured, and cannot recover damages for his
injury.

2. SAME: SAME: *Negligence of fellow servants.*

If the negligence by which the accident occurred was that of a fellow ser-
vant of employé, this fact of itself would be fatal to the plaintiff's recov-
ery, unless the company had neglected due care in the selection of ser-
vants; or unless their incompetency, or the existence of defective mate-
rial or machinery, had been brought to the knowledge of the company.
N. O., J. & G. N. R. R. Co. *v.* Hughes, 49 Miss., 258.

ERROR to the Circuit Court of *Alcorn* County.

Hon. ORLANDO DAVIS, Judge.

J. J. Thomas sued the Memphis & Charleston Railroad Co., to
recover damages sustained by him while acting as engineer on the
passenger train of said road, because of serious and permanent
personal injuries occasioned by the defective switch, and the run-
ning off of the track of the engine and train.

The declaration avers that the plaintiff in error undertook to
furnish a good, safe and secure road, and provide and keep good,
safe and secure switches, and to employ competent and suitable
persons to keep said road and said switches, in good, safe and
secure repair and condition, and employed plaintiff in the capa-
city of engineer. That the railroad company neglected and failed
to employ competent persons for the purpose, and failed to keep
the road and switches in good order, and by this wrongful, care-
less, and neglectful discharge of their duty and contract, the train
was thrown from the track, at the switch at Glendale, and the
engineer Thomas was scalded, wounded and disabled, and averring
special and general damages. There was no demurrer to the dec-
laration, but a plea of "not guilty," on which issue the evidence
was introduced, and a verdict was rendered for the plaintiff, and
the case comes to this court upon a writ of error.

*F. E. Whitfield*, for plaintiff in error:

If the plaintiff's own negligence contributed to the injury, he
cannot recover. Sherm. & Redf. on Negligence, ch. 3, 23-25,

Pierce Am. R. Law, pp. 273–75; M. & C. R. R. v. Whitfield, 44 Miss., 486; V. & M. R. R. v. Wilkins, 47 id., 404; Sills v. Brown, 9 Car. & Payne, 601; 38 Eng. C. L., 245; Sherm. & Redf., 37, 39. He cannot recover for injuries sustained by the negligence of his fellow servants, etc. Sherm. & Redf. on Neg., §§ 5, 13, 86, and 87; Redf. on Railways, §§ 131 and 517; Saund. on Neg., pp. 12, 13, 14; Weger v. Penn. R'y Co., 55 Penn., 460; Sherm. & Redf., p. 115, §§ 87, 99; Durgin v. Munson, 9 Allen, 397; Gallagher v. Piper, 111 Eng. C. L., 669; Wright v. N. Y. Cent. R. R. Co., 25 N. Y., 566; Seaver v. Boston & M. R. R., 14 Gray, 466; Ryan v. Fowler, 24 N. Y., 414; Torrant v. Webb, 18 C. B. (86 E. C. L.), 801; N. O., J. & G. N. R. R. Co. v. Hughes, 49 Miss., 258. The railroad company is only bound to ordinary or reasonable care with reference to its servants. Pierce Am. R'y L., p. 2867; Sherm. & Redf., p. 103, § 87; and that there is no warranty of soundness or safety. Wright v. N. Y. Cent. R. R. Co., 25 N. Y., 566. The evidence must reasonably sustain the verdict. Duncan v. Watson, 28 Miss., 187; Shaw v. Boston & W. R. R. Co., 8 Gray, 45.

*Sale & Dowd*, for defendant in error:

The whole case presents simply a question of fact, and not of law. If a railway company employs suitable and proper agents to keep the railroad switches, etc., in order, they are not liable for injuries sustained by an employé, arising from the negligence of a coemployé. But in this case, it is averred, and it is in proof, that the company had no agent at all; for this neglect they became liable for the injury. 5 Ohio St., 541; V. & M. R. R. v. Wilkins, 47 Miss., 414–15; Noyes v. Smith & Lee, 28 Vt., 59; McGatrick v. Wason, 4 Ohio St., 566. The omission of the railroad to have and maintain suitable tracks, switches or turnouts, or sufficient bridges, will clearly render them liable in damages to a person in their employment. 8 Allen (Mass.), 446. Seaver v. Boston & M. R. R. Co., 14 Gray, 466; Cayzer v. Taylor, 10 id., 274, 282 and notes; Farwell v. Boston & W. R. R. Co., 4 Metc., 49. In Warner v. Erie R. R. Co., 39 N. Y., 475, the court say, that to

exempt the road from liability to injuries sustained by an engineer, it must be proven that the switches or structure used was without fault, as to plan or material, and were entirely sufficient for the purpose, and that the company employed skillful and trustworthy agents to supervise, examine and test it, and that duty was performed with frequency. The charges given by the court were numerous, and strongly in favor of the company.

TARBELL, J., delivered the opinion of the court.

Thomas was an engineer in the employ of the M. & C. R. R. Co. While so employed, a train driven by an engine in charge of Thomas ran off the track, by which he was seriously injured. A suit by him resulted in a verdict against the company for $2,000 damages. Thereupon a writ of error was presented. The following are assigned as grounds of error: Admitting evidence that plaintiff had a wife and two children; permitting testimony as to condition of switch two weeks prior to the accident; instructing jury in the language of plaintiff's charges; refusing to instruct the jury in the language of defendant's first and second charges; that the verdict is contrary to the evidence; that the verdict is against the law of the case; and in overruling motion for a new trial, on affidavit of surprise, and other causes stated in the motion.

The application for a new trial gave the following reasons therefor: Refusing defendant's charges; in giving plaintiff's charges; allowing illegal testimony for plaintiff; verdict contrary to law; verdict against the evidence; verdict excessive; surprise; and in refusing to admit defendant's testimony.

Thus numerous questions are presented for consideration. It is believed, however, that the solution of this case is found in the testimony of the plaintiff in the action, who was examined as a witness in his own behalf, and testified as follows:

I have been a railroad locomotive engineer for thirteen years, during which time I ran engines upon the defendant's road; was in defendant's service as engineer for several years before the war and two years soon after the war; and was again in their service

for about eighteen months immediately preceding the injuries complained of in this suit; was driving one of defendant's engines, going west at Glendale, a flag station on defendant's road, on the 30th day of January, 1869, which ran off the track at the switch of said station; was running the engine with the regular passenger train attached, at the rate of ten miles an hour at the time it ran off the track; had shut off the steam some time before, between 1-4 and 1-2 before reaching switch, but turned on steam again just before reaching it. The accident happened about 7 1-2 A. M., on a rather misty, or cloudy morning; after the engine ran off the track, it ran over the crossties to a trestle, 30 or 40 feet ahead, and fell through the trestle; *  *  if the switch had been in good order the locomotive would not have run off. *  *  *  The rules of the road require engineers when approaching switches to reduce speed of trains to six miles an hour; *  *  the switch, when the accident occurred, was in charge of no person; it is not the practice of the company to have switchtenders or guards at flag stations. *  *  *  The schedule I was running by had a rule upon it that engineers shall slacken their speed to six miles an hour when passing switches.; *  *  * six miles an hour is very slow, about as fast as a man walks.

Without quoting further from the evidence, there are already developed insurmountable obstacles to a recovery by the plaintiff in the action.

1. The rules of the company required engineers to slacken speed to six miles an hour when passing switches. At this rate, the train would have moved " only about as fast as a man walks." It requires no evidence to show that at this reduced speed, no accident could have happened. The engineer, therefore, directly contributed to the accident by which he was injured. The rule is well settled that in such case he is not entitled to recover. V. & M. R. R. Co. v. Wilkins, 47 Miss., 404; M. & C. R. R. Co. v. Whitfield, 44 id., 486, etc. And the rule applies with much greater force to a case like the one at bar, where the plaintiff, who was engineer, was driving his engine at the moment of the acci-

dent, voluntarily, and of his own accord, at a speed prohibited by the company; in fact in violation of a rule, of which he was informed. Felch v. Allen, 98 Mass., 572, etc.

2. No switch-tender or guard was employed at the place of the accident complained of, because it was a flag station. So far as this omission was the cause of the accident, the engineer cannot be heard to complain of it, for the reason that he well knew this rule or practice of the company, and continued in service notwithstanding. In so continuing service, he took all the risks of such omission.

The record also presents other obstacles to a recovery by the engineer, exclusive of all consideration of those based on the rule of contributory negligence. The switch had been used by another servant of the company about an hour before the accident. Suppose the fact of contributory neglect to be out of the case. If the switch was displaced or left out of order by a fellow servant, this fact would be, of itself, fatal to the plaintiff's recovery, unless the company had neglected due care in the selection of servants; or, unless their incompetency, or the existence of defective material or machinery, had been brought to the knowledge of the company.

This subject was most patiently, thoroughly and carefully considered in N. O., J. & G. N. R. R. Co. v. Hughes, 49 Miss., 258. See also, Pierce's Am. R'y L., ch. 13, p. 286; S. & R. on Neg., §§ 5, 12, 13, 86, 87, 99, 109; 1 Redf. L. of R'ys, § 131, p. 517; Saunders on Neg., pp. 12, 13, 14; 55 Penn. St., 460; 9 Allen, 397; 111 Eng. Com. L. R., 669; 25 N. Y., 566; 14 Gray, 466; 20 Mich., 105; 4 Met., 49; 3 Cush., 272; 6 id., 75; 9 id., 112; 14 Gray, 466; 5 N. Y., 492; Couch v. Steel, 77 Eng. C. L., 402; Seymour v. Maddox, 71 id., 326; Tarrant v. Webb, 86 id., 801; Wigget v. Fox, 11 Exch., 832; 5 id., 343; id., 354; 103 Eng. C. L., 429; 101 id., 437; 111 id., 668.

And the result would be the same if the displacement was the work of an intermeddler; the company, being otherwise without fault, would not be responsible to the engineer. S. & R. on Neg., § 280.

There was evidence to show that about two weeks prior to the accident, the switch where it occurred was fastened with a common spike in lieu of the usual machinery, but there was no evidence of knowledge on the part of the company or its agents; or that the spike rendered the switch insecure; or that this was the cause of the accident; or that this was the condition of the switch at the time of the accident.    On the contrary, the conductor of a freight train testified that he used the switch about an hour prior to the accident, and that he found it and left it in good order.    Immediately after the accident, the switch was examined by several, who concur in stating that the proper fastening and lock were then found on a cross tie close by their due place in the switch.

Upon the trial, the questions growing out of this testimony occupied a large share of attention, as they do in the argument here, but the views heretofore expressed render these questions, upon the record presented, of secondary consideration.

The rules conclusive of this case may be briefly repeated, viz: Even if the material and machinery of the switch were defective, the company's servants incompetent, and the switch out of order or displaced, with the full knowledge of the company, nevertheless, the rule as to contributory neglect is fatal to the action.    Admitting all this, yet, if, by ordinary care and prudence on the part of the engineer, the accident might have been prevented, he cannot recover.

And the applicability of another rule in this class of cases may be negatived by the single remark that the facts do not present a case in which the company, upon the theory of its own neglect, would be liable, notwithstanding the want of prudence of the servant, as, by the observance of due caution on his part, the accident might have been avoided, even conceding the neglect and knowledge of the company in the strongest light in which it can be viewed from the evidence.

Emphasis is given to the foregoing from the fact, that, of his own accord, the engineer drove the engine at a rate of speed pro-

hibited by the company. In doing this, he violated a printed rule which he had before him; a rule prepared expressly to guard against accidents at switches. The disregard of this rule not only caused the accident and the injury to the plaintiff, but endangered the property of the company and the lives of passengers.

Although this case is thus concluded, there is another portion of the evidence of the engineer, which cannot be considered otherwise than as extraordinary, and as demanding notice here in the interest of the public.

The engineer further testified, that: "The time table now shown me is the same schedule by which I was then running, but the copy I had had no such rule upon it, as appears on the back of this, in words as follows: 'Rules and regulations of the Memphis & Charleston Railroad Co. Engineers must approach stations expecting them to be wrong.' * * I never had made known to me any such rule as also appears on said schedule in words as follows: 'No excuse will be received for ignorance of any published rule or regulation.'"

Yet, he testifies to a service with this company of ten or fifteen years. It would seem that the servant must have been grossly, or at least inexcusably, ignorant; or, the company must have been culpably negligent, or at least insufficient in the service of copies of rules and regulations upon its employés.

With the motion for a new trial an affidavit was filed, referring to this evidence of the engineer, and averring that it was a surprise which the company could not meet on the trial. This can be well perceived, and it is believed a case of surprise was presented entitled to favorable consideration. There was no evidence to show that these rules had always been in force, and that there were no cards or schedules, authorized by the company, without them. Both parties to the action and the traveling public were alike concerned in this question.

It will of course be understood, that this opinion is based on the record as it is now presented.

Judgment reversed, cause remanded, and a new trial awarded.