HEINRICH REBER, Respondent, *v.* GEORGE T. TOWER, Appellant.

### November 22, 1881.

1. The master is bound to exercise reasonable care that the structures, machinery, and appliances furnished by him for his servants' use, are safe.

2. Except as to matters coming within the range of his peculiar skill, the servant has the right to assume that the machinery furnished him is reasonably safe.

3. The master is chargeable with such knowledge as to the character and condition of his machinery as he might have acquired by the exercise of due care.

4. It is error to tell the jury that, as matter of law, if the plaintiff was required, in the discharge of his duty, to go upon the platform, it was his duty to keep it in safe condition.

5. The negligence of a vice-principal, in charge, is the negligence of the master.

6. Where the discretion of the trial court has not been abused, in permitting leading questions on direct examination, the appellate court will not interfere.

7. Where it appears that the admission of incompetent evidence could not have misled or prejudiced the jury, its admission is not cause for a reversal.

APPEAL from the St. Louis Circuit Court, WICKHAM, J. *Affirmed.*

E. T. ALLEN, for the appellant: The master may rely upon the judgment of the servant as to the safety of machinery where it is within the range of the servant's peculiar skill. — *Georgia R. Co.* v. *Kenney*, 58 Ga. 485 ; *Nolan* v. *Shickle*, 69 Mo. 336 ; *Hulett* v. *Railroad Co.*, 67 Mo. 239.

The defendant had no notice of defects and was not negligently ignorant of them. — 2 Thomp. on Neg. 1053, sect. 48. It appears that the plaintiff was grossly negligent. — 2 Thomp. on Neg. 1016 (citing 5 Ohio St. 541, 564.) In this case, the risks incurred by plaintiff in the services rendered were not " equally open to the observation of himself and the master," but plaintiff had far greater opportunities for knowing the condition of the ladders and the platform than had the defendant. — *Cummings* v. *Collins*, 61 Mo. 520.

BROADHEAD, SLAYBACK & HAEUSSLER, for the respondent : It is the duty of the owners and managers of such premises to exercise reasonable care in order to protect employees against accident. — *Lydon* v. *Manion*, 3 Mo. App. 601 ; *Whalen* v. *Church*, 62 Mo. 237 ; *Conroy* v. *Iron Works*, 62 Mo. 35. The employee has a right to rely upon the superior judgment and caution of his employer to protect him against the dangers that are extra hazardous. — *Keegan* v. *Kavanaugh*, 62 Mo. 230 ; *Hornet* v. *Nicholson*, 56 Mo. 220 ; *Cook* v. *Railroad Co.*, 63 Mo. 397. It was for the jury to decide upon the questions of fact as to whose negligence caused the disaster, and where there was evidence offered and admitted on both sides, to decide whether there was such contributory negligence on the part of the plaintiff as would deprive him of redress. — *Wyatt* v. *Railroad Co.*, 62 Mo. 408.; *Lottmann* v. *Barnett*, 62 Mo. 160 ; *Stoddard* v. *Railroad Co.*, 65 Mo. 515 ; *Smith* v. *Railroad Co.*, 61 Mo. 588.

THOMPSON, J., delivered the opinion of the court.

This is an action by a servant to recover damages from his master for an injury alleged to have resulted from the negligence of the latter. On December 15, 1879, the defendant was proprietor of an establishment in St. Louis in which was carried on the manufacture of candles, soap, and oil. In carrying on this business he had in his works a tank, in which, as we understand the testimony, the render-

ing of the tallow or grease was effected by means of steam. This tank was made of copper and was sunk in a well, some thirty feet deep. Surrounding this tank of copper, with a space between, was another tank made of iron. The process of rendering was carried on by forcing hot steam into the annular space between these two tanks. Surrounding the outer tank, and between it and the wall of the well, was another annular space about three feet in width, which was left for the purpose of permitting access to the outer tank when necessary to repair it. Midway between the top and bottom of this annular space was a platform on which were placed ladders, to be used by workmen in repairing the upper portion of this outer tank. The lower portion would likewise be repaired when necessary, by means of ladders let down from the platform to the bottom of the well. This annular space between the two tanks was filled with steam by means of steam boilers and connecting pipes. The platform was built of wood. It had been built some years before the above date, and the testimony is conflicting whether or not it had been rebuilt, remodelled, or repaired in the month of May preceding. There is testimony tending to show that while the steam was on, which was all the time except Sundays or during repairs, the heat between the outer tank and the wall was about 135° Fahrenheit, and that it was damp from the occasional escape of steam, and from water which would accumulate in the bottom of the well, and which had to be bailed out from time to time. It is obvious that wood would rapidly decay in such a temperature; that soft wood would disintegrate much more rapidly than hard wood; and this will perhaps account for the accident which happened, when it is stated that the platform in question was made of pine.

The plaintiff was employed by the defendant as engineer, at a salary of $15 a week. As such it was his duty to superintend the steam boiler and connecting pipes, and the process of filling and emptying the inner tank or vat. He

was an experienced machinist, and the testimony tends to show that it was also his duty to make such repairs to the tanks as were practicable without calling in the assistance of experienced boiler-makers. He denies in his testimony that it was his duty to go upon the ladders supported by the platform spoken of, in order to make repairs, and claims that he did it gratuitously ; but his petition states that such was his duty, and the whole testimony shows such to have been the fact, and his testimony under this head is not ingenuous. It does not necessarily follow, however, from anything in the evidence, that it was his exclusive duty to inspect and keep in repair the wooden platform. A carpenter was employed at the works, whose duty it was to make repairs in wood, and he, it seems, made any repairs in the platform or ladders which he was requested to make by the engineer or by Mr. Goodwin, the superintendent, to whom, as the proof shows on both sides, the defendant had committed the entire superintendency of the works, and whom he had specially charged to take measures for the safety of the employees. There was no evidence from which the jury could properly have inferred that it was the duty of this carpenter to inspect and keep in repair this wood-work, but it was undoubtedly Mr. Goodwin's duty to do so ; and the crucial point in this case is, was it also the duty of this plaintiff.

At the date of the accident he had been in the employ of the defendant about three months, and prior to that time he had had but one occasion to go down into this outer annular space for the purpose of repairing the outer tank, which was about a month before. He had never inspected the platform, though he had observed that the ladders were unsafe, and had requested the carpenter to make new ones.

At the date of the accident a leak had been discovered in the outer tank ; it was allowed to cool down over Sunday, and early on Monday morning the plaintiff and Mr. Groll, the fireman, went down for the purpose of repairing it.

When they were ascending the platform gave way, and they were precipitated to the bottom of the well, where the plaintiff sustained injuries which compelled the amputation of one of his legs, and Groll sustained injuries which are said to have resulted in his death. The platform was found at the bottom of the well, broken to pieces. The ladder on which they had attempted to make the ascent had also a piece broken off from one of its feet. Without analyzing the testimony closely, it may be said that the plaintiff's testimony tends to show that the platform gave way from a deficiency of strength, while the defendant's testimony tends to show that the cause of the accident was that, while the plaintiff was ascending the ladder, Groll, contrary to the plaintiff's caution, got upon it and attempted to ascend also; that the ladder would not sustain the weight of both, and broke at the foot as stated, which precipitated both of them upon the platform; and that it was their falling upon the platform which caused it to give way, and not any lack of strength to stand, without a shock, the weight which was thus upon it. With this conflict of testimony, we, of course, have nothing to do; it was wholly a question for the jury.

Before considering the instructions given and refused, we may recur to the law governing cases of this kind, as laid down by the supreme court in its most recently reported decisions on the subject. It is there laid down in substance, that a master owes a duty to his servant to exercise reasonable care, to the end that the machinery, structures, and appliances with which the servant has to do are as safe as is consistent with the end for which such machinery is intended, and with the state of improvement in the particular department of industry; that the master and servant are not under an equal duty in this regard, and that "the servant has a right to assume that the machinery or implements furnished him by the employer are safe and suitable for the business, and he is not, while the master is, required to

examine them for that purpose. The master is chargeable with knowledge which he might have acquired by the exercise of due care, the same as if he actually possessed it; whereas the servant has the right to assume that all the necessary examinations have been made by the master, and is not required, either in person or by another employed by him for the purpose, to examine the machinery as to its fitness and sufficiency." *Porter* v. *Railroad Co.*, 71 Mo. 66, 79. Of course this rule does not exclude the other rule, that as to matters coming within the range of the servant's peculiar skill, the master may rightfully trust to the servant himself to make the necessary inspections, to repair defects, or to provide the necessary measures of safety. To illustrate: If the plaintiff in this case had been injured by the explosion of the steam boiler in his charge, the question of his contributory negligence would become a serious one. *Vicksburg R. Co.* v. *Wilkins*, 47 Miss. 404; *Hubgh* v. *Railroad Co.*, 6 La. An. 495; *Illinois R. Co.* v. *Houck*, 72 Ill. 285. But the evidence does not disclose that the safety and sufficiency of this platform was in any special manner committed to the care and skill of the plaintiff. In fact, we see nothing whatever in the evidence to take the case out of the rule which the supreme court has thus laid down.

Tested by these principles, let us examine the instructions given and refused. At the close of the plaintiff's case, the defendant asked the court to instruct the jury that the plaintiff could not recover, and this was refused. It cannot for a moment be contended that there was error in this. Nor is it at all necessary to enlarge upon this point. Upon the plaintiff's evidence there was clearly a case for the jury.

At the close of the whole case, the learned judge gave the following instructions, at the instance of the plaintiff:

" 1. If the jury find for plaintiff, they will assess his damages at such sum as they may think just and proper,

upon the evidence in the case, not to exceed the sum of $20,000.

" 2. If the jury believe from the evidence that on or about December 15, 1879, defendant, either himself in person or by his authorized agent, requested the plaintiff to go down into the cistern or well of the defendant's soap factory, in the discharge of his duty as engineer, and that the wooden platform upon which the ladders facilitated the descent into said cistern or well alongside of an iron tank was at the time rotten, decayed, and defective, and that defendant had carelessly or negligently permitted the same to become unsafe, rotten, decayed, and defective in strength, and that defendant knew of, or by the exercise of reasonable care might have known of and remedied such platform, and rendered the same reasonably safe, and shall further find from the evidence that he neglected to do so, and that by reason of such neglect on the part of defendant, the plaintiff sustained the injuries complained of, without any fault of plaintiff, or any negligence of plaintiff which contributed directly and proximately to the disaster to him, then the verdict of the jury should be for the plaintiff."

The court also gave the following instructions, at the instance of the defendant : —

" 1. If the jury find from the evidence that it was a part of the duty of plaintiff, as engineer in the factory of defendant, to superintend, control, keep in repair, or manage the iron tank mentioned in the petition ; that in the performance of this duty he had occasion to make use of the platform mentioned in the petition ; that said platform was entirely hidden from all persons except those whose duties called them into the well, around said tank, and could only be seen by the use of a candle, the jury is instructed that it was the duty of the plaintiff to keep said platform in a safe condition ; and if the jury find from the evidence that plaintiff, having seen in said platform any rottenness, decay, or defect which occasioned the injury complained of, neglected

to repair the same; or if the jury find from the evidence that plaintiff did not know of any rottenness, decay, or defect in said platform from neglect on his part to examine and inspect the same, they will find for the defendant, even though they should find from the evidence that the injury complained of resulted from the rottenness, decay, and defect of said platform.

" 2. If the jury find from the evidence that it was a part of plaintiff's employment, as engineer at defendant's factory, to keep in repair the platform and ladders mentioned in the petition, they will find for defendant."

The defendant then asked the court to give the following instructions, all of which were refused : —

" 3. If the jury believe from the evidence that A. S. W. Goodwin was the superintendent of defendant's factory, and that plaintiff was subject to said Goodwin's orders in the discharge of his duties, as stated in the petition, and that the injury complained of resulted from any neglect on the part of said Goodwin, as such superintendent, in seeing that the platform mentioned in the petition was kept in repair, then the jury is instructed that plaintiff cannot recover, unless they further find from the evidence that defendant, knowing, or having reason to know, that Mr. Goodwin was an unfit, incompetent, or negligent superintendent, continued to keep him in his employ.

" 4. If the jury find from the evidence that plaintiff was injured by reason of any rottenness, decay, or defect of the platform or ladders mentioned in plaintiff's petition, they will find for defendant, unless they further find that defendant had notice of such rottenness, decay, or defect, and neglected to repair the same after such notice.

" 5. The jury are instructed that, under the evidence in this case, if the jury believe the same to be true, their verdict should be for the defendant."

The plaintiff's instructions were both correct in point of law and correct as applicable to the facts of the case, though

quite general in their terms. Clearly the giving of them was no error.

The instructions asked for the defendant were, all of them except the second, the one given as well as the ones refused, erroneous in point of law. The first one had the effect of telling the jury that if the plaintiff was required, in the discharge of his duty as engineer, to go upon the platform, it was his duty to keep the same in a safe condition. There is no rule of law from which such a deduction can be made, and it is in direct conflict with the doctrine of the supreme court as laid down in the case of *Porter* v. *Railroad Company*, above quoted. The court could no more tell the jury, as matter of law, that if the plaintiff had occasion to go upon the platform in the discharge of his duty, it was incumbent upon him to attend to its safety, than he could have told them, if the plaintiff had been injured by the roof of his engine-house falling in, that if he was required to stand under the roof in the discharge of his duty, it was incumbent upon him to keep the roof in repair. Whether, under the circumstances of this case, it was incumbent upon the plaintiff to keep this platform in repair, was a question of fact for the jury, to be deduced from the evidence, and the court could not properly instruct the jury to find that such was the fact, from the mere fact that it was the duty of the plaintiff to go upon the platform. *Roberts* v. *Smith*, 2 Hurl. & N. 213; *Williams* v. *Clough*, 3 Hurl. & N. 259. An engineer or machinist does not, by going upon a scaffolding which is a part of the permanent structure of the place where he is employed, assume the risk of its safety; but, on the other hand, he may rightfully trust to the providence of his master in this regard. In view of this instruction, it is difficult to see how the jury could have found for the plaintiff, or how the learned judge came to refuse the motion for a new trial, unless he afterwards, on further consideration, concluded that the instruction was not sound. If the verdict had been for the defendant,

and the plaintiff had brought the case here, we should have been compelled to reverse the judgment for the giving of this instruction ; and, as we have before stated, it was upon the point which was the very stress of the case. This question was correctly put to the jury in the defendant's second instruction.

The third instruction asked for by the defendant, and refused, was also erroneous in law. The law is exactly the other way. The instruction would entirely abolish the rule of *respondeat superior.* If Mr. Goodwin and the plaintiff had been fellow-servants engaged in the same common employment, then the instruction would have been correct. But they were not. Mr. Goodwin was the vice-principal of the defendant, in entire charge of the establishment, and exercising all the authority and discretion, even to the employing of the hands, that could be exercised by the defendant. Under such circumstances, Mr. Goodwin's negligence, if such there were, was the defendant's negligence, and the case stands in exactly the same plight as if Mr. Goodwin had not been there at all, but the defendant had been managing the establishment himself. *Siegrist* v. *Arnot*, 10 Mo. App. 197 ; *Gormly* v. *Iron Works*, 61 Mo. 942 ; *Brothers* v. *Cartter*, 52 Mo. 372 ; *Devany* v. *Iron Works*, 4 Mo. App. 236 ; *Stoddard* v. *Railroad Co.*, 65 Mo. 514 ; *Mullan* v. *Railroad Co.*, 78 Pa. St. 25, 32 ; *Malone* v. *Hathaway*, 64 N. Y. 5 ; Whart. on Neg., sect. 229.

The next instruction asked for by the defendant, and refused, was contrary to well-settled principles of law as laid down in the case of *Porter* v. *Railroad Company*, already cited, and in many other cases. It is a general rule of law, that where knowledge is essential to charge a person, negligent ignorance is the same as actual knowledge. 2 Thomp. on Neg. 994, and cases there cited ; *Gibson* v. *Railroad Co.*, 46 Mo. 163. "It is the master's duty," said Lord Cranworth in a leading case, "to be careful that

his servant is not induced to work under the notion that his tackle or machinery is staunch and secure, when in fact the master knows, *or ought to know*, that it is not so." *Paterson* v. *Wallace*, 1 Macq. H. L. Cas. 748; *s. c.* 28 Eng. L. & Eq. 50.

The last instruction refused need not be discussed. There was no case for a peremptory instruction against the plaintiff. There was what the books term " evidence of negligence " to go to the jury, and we have no power to revise their finding. Their verdict, on the argument, was conceded to have been a small compensation for the injury actually suffered. No doubt the humane conduct of the defendant, and of Mr. Goodwin, towards the plaintiff, influenced the jury in placing the quantum of damages at what must, in the light of many other verdicts, be considered a low figure. The evidence showed that the defendant, acting through, and on the advice of Mr. Goodwin, procured for the plaintiff the best surgical attendance to be had in the city; that he not only paid for this, but that he paid the wages of the plaintiff down to the time of the bringing of this suit; that he purchased for him an artificial leg, and that he offered to take him back into his employ, giving him light work and paying him the same wages he had before had. Certainly this conduct is to be highly commended, and the conduct of the plaintiff, as compared with it, does not stand in so favorable a light. But these circumstances cannot in any way influence the plaintiff's legal rights, or the defendant's legal liability; and we cannot look to them in any way in making up our judgment in the case.

It remains to consider two exceptions to rulings upon questions of evidence. During the progress of the trial, the learned judge permitted the plaintiff's counsel to ask the plaintiff, when testifying as a witness, several leading questions, on the ground, which is apparent from the testimony as preserved, that the plaintiff had a very imperfect knowledge of the English language. To permit leading

questions to be asked a witness is a matter resting in the discretion of the trial court, and the rule is here, as in other cases of the exercise of discretion, that the ruling cannot be revised on appeal except in very clear cases of abuse. *Wilbur* v. *Johnson*, 58 Mo. 600 ; *St. Louis R. Co.* v. *Silver*, 56 Mo. 265 ; *King* v. *Mitialberger*, 50 Mo. 182 ; *Meyer* v. *Railroad Co.*, 43 Mo. 523 ; *Smith* v. *Hutchings*, 30 Mo. 380 ; *The State* v. *Hughes*, 24 Mo. 147 ; *Walsh* v. *Agnew*, 12 Mo. 520. We cannot say that the discretion was abused in this case.

A witness, Brown, had testified that he had brought up pieces of rotton wood from the bottom of the well soon after the accident happened. The plaintiff, on the witness-stand, was asked the following question : " Did you look at any portion of the wood on that platform — that is, did you examine the condition of the wood after you fell? " and the plaintiff answered : " No ; but two days afterward a fireman by the name of Brown showed me some." And in answer to another question he stated that this was the same Brown who had been on the witness-stand. This testimony was objected to on the ground that it was hearsay, and the objection was overruled. Undoubtedly this ruling was technically erroneous ; but we see no substantial prejudice in it. The plaintiff did not say what kind of wood it was, whether it was sound wood or rotten wood. At most it had a tendency to corroborate Brown's story about bringing up rotten pieces of wood from the bottom of the well ; but this story could not have had any material influence upon the verdict ; for the evidence on the part of the defendant tended to show that pieces of wood had been left in the bottom of the well from former repairs, and that they had become more or less decayed by water and heat. This whole story of the rotten wood might be left out of the testimony without materially affecting the plaintiff's case ; for it still would appear that this platform was of pine wood ; that it fell with the weight of the plaintiff, another

man, and a ladder, and that it broke in several pieces at the bottom of the well. And whether it had been long built, or whether it had been recently repaired or reconstructed, the defendant has not introduced any of the evidence which is usually introduced in such cases to negative negligence on his part. He has not shown that it was built, in the first place, or that it was ever rebuilt or repaired, by a mechanic of competent skill and judgment; that it was ever subjected to any test with the view of determining its strength, or the progress of decay in the wood of which it was composed; or that it had ever been subjected to a careful or continued inspection. In the absence of such defensive proof, we must say that the jury were well warranted in finding that there was negligence; and whether there was negligence on the part of the plaintiff contributing to the accident is a question which was also for them to determine, and which, by their verdict, they have resolved in favor of the plaintiff, on instructions which, as we have pointed out, were more favorable to the defendant than the law warranted.

The judgment is accordingly affirmed. Judge BAKEWELL concurs; Judge LEWIS is absent.