## L. R., M. R. & T. Ry. Co. v. Leverett, Admr.

1. **Evidence:** *Res gestæ.*

   Leverett, an employe of a railroad company, was run over and killed while engaged in uncoupling cars. While still under the car he told his brother the cause and manner of the injury. *Held:* In an action by his administrator against the company for damages for negligence, that the statement to his brother was a part of the *res gestæ* and admissible as evidence.

L. R., M. R. & T. Ry. Co. v. Leverett, Admr.

2. DAMAGES: *To parent from death of son by railroad    Evidence.*

In an action under the statute by a parent against a railroad company for. the negligent killing of a son, evidence of the poverty of the parent and her dependence upon the son for support and maintenance, is admissible to show the pecuniary damage sustained by her in the death of the son.

3. RAILROADS: *Duty of company to employe.*

In employing one to act as switchman and to couple and uncouple cars, the railroad company undertakes to exercise reasonable care and prudence, to provide and keep a safe road-bed and tools for the exercise of the employment, and the employe assumes the risks ordinarily incident to the service he undertakes; but the negligence of the company in failing to provide a safe place and tools, is not a risk incident to the service, nor one assumed by the employe; and if injury results to the employe from such negligence of the company, it is liable, unless the employe at and before the time of the injury had full knowledge of the unsafe condition of the road-bed or place where he was to work   In this case he should refuse to work until the road-bed is made safe, or he will be responsible for the consequences.

4. MASTER AND SERVANT: *Diligence required of each as to tools, etc.*

It is the duty of the master to search for latent defects in appliances furnished the servant to work with that would render them unsafe; but the servant is required to notice only such defects as are patent to ordinary observation.

5. RAILROAD: *Employe's duty to observe rules of company.*

An employe of a railroad company is not bound by a rule of the company which is not brought to his attention, or which is habitually disregarded with the knowledge of his superior officers, and without any effort on their part to enforce it, or when the usage and practice of the company tend to mislead him in the violation of the rule.

6. CONTRIBUTORY NEGLIGENCE: *Burden of proof.*

Contributory negligence is matter of defense to be proved by the defendant.   It cannot be presumed.


APPEAL from *Desha* Circuit Court.
Hon. J. A. WILLIAMS, Judge.    .


*J. M. Moore,* for appellant.

1.   The declarations of the deceased as to the manner

in which he was injured were not competent.  *2 Ark.*,
*246; 97 Ill., 101; 24 Kans., 189.*

They were not admissible as part of the *res gestæ*.  *8
Wall., 397; 30 Vt., 377 47; ib., 583; 8 Conn., 263; 3 ib.,
250; 41 ib., 55; 128 Mass., 422; 95 N. Y., 774.*

2.  The exclusion of evidence as to regulations on other
railroads in regard to coupling, was error.

3.  The pecuniary condition of the mother, her poverty
or wealth, could not be taken into consideration in assess-
ing damages under the statute, and evidence thereof was
clearly inadmissible.  *102 U. S., 451; 2 Thomps. on Negl.,
1290–1; 3 Wood's Ry. Law, sec. 413.*

4.  An employe who knows, or by the exercise of reason-
able diligence might know, of the existence of defects in
the machinery or appliances with which he is to work,
cannot recover for an injury caused by such defects.  He
is held to have assumed the risk.  *39 Ark., 38; 41 Ark.,
542; 27 Minn., 137; 25 N. Y., 562; 20 Mich., 114; 63 N.
Y., 452; 9 Exch., 223; 2 Thomp. on Negl., 1008, sec. 15 and
note 3; 16 Q. B., 326; 3 Wood's Ry. Law, 1153–4.*

" The servant, in order to recover for defects in the ap-
pliances of the business, is called upon to establish three
propositions:

" 1.  That the appliance was defective.

" 2.  That the master had notice thereof, or knowledge,
or ought to have known.

" 3.  That the servant did not know of the defect, *and
had not equal means of knowing* with the master."  *Ib.,
1492.*

The eighth and ninth instructions by defendant should
have been given.  If the track was not ballasted and was
in bad condition, and these facts were known to deceased,
it was imprudent and negligent in him to enter between
the cars for the purpose of uncoupling them while the

train was in motion. *6 Am. and Eng. Ry. Cases, 160–1; 39 Iowa, 615 ; 43 ib., 396 ; 56 Ga., 274; 58 ib., 112.*

*X. J. Pindall* and *B. F. Grace,* for appellee.

1. The declarations of deceased were part of the *res gestæ* and properly admitted. *8 Wall., 397; 15 A. and E., 291; 80 Ky., 399; 72 Ga., 217; 53 Am. Rep., 838.*

2. The evidence of Marshall properly excluded. An employe is not bound by a rule of the company not brought to his attention, or which it has habitually neglected to enforce. *11 Am. and E. Rep., 193; 12 A. and E., 223.*

3. Evidence as to the condition of the mother, as to her means and dependency on the son for support, were properly admitted. *19 A. and E. Rep., 173; 28 Minn., 103; 30 ib., 126; 4 Bliss, 430.*

4. It is admitted that the road-bed was in bad condition, but it is contended that if deceased had an opportunity to know the condition of the road he cannot recover. The evidence shows he had no such knowledge, nor the means of such knowledge.

Plaintiff's instructions one, two and three are supported by *11 A. and E. Rep., 175–8–9; ib., 190–1; ib., 199; Pierce on R. R., 370; 4 Fed. Rep., 277; 61 Ala., 556; 73 N. Y., 40; 59 Ala., 246; 44 Md., 284; 15 A. and E., 300–1–2; 135 Mass., 575; 1 Thomp. Neg., 541, 582.*

The fourth is supported by *11 A. and E., 193–4–5, 301.*

As to measure of damages. *39 Ark., 509; 9 A. and E. R. Cases, 368; 33 Ark., 368; 15 A. and E. R. Cases, 286.*

As to contributory negligence, see *Wharton on Neg., sec. 211–12; 100 U. S., 213; 15 A. and E. R. Cases, 265.*

Courts are averse to setting aside verdicts because excessive. *7 Kans., 380; 42 Miss., 607; 16 Kans., 356; 19*

*Barb.*, *461*; *15 Minn.*, *49*; *51 Ga.*, *582*; *45 ib.*, *288*; *37 Mo.*, *240*; *36 Miss.*, *660*; *12 Barb.*, *492*; *51 Ill.*, *833*; *57 ib.*, *265*.

BATTLE, J.   This was an action brought by Sallie L. Leverett, as administratrix of the estate of James W. Leverett, deceased, against the Little Rock, Mississippi River and Texas Railway Company, to recover damages alleged to have resulted from the negligence of the defendant in wrongfully causing the death of the deceased. . The action was brought under section 5226 of Mansfield's Digest, to recover damages for the benefit of the next of kin of the deceased.

The negligence averred is, that defendant's road-bed, tracks and station at the town of Arkansas City were constructed on a high embankment, with a narrow and insufficient crown, and steep, slippery and insufficient slopes; that the cross-ties placed on the embankment extended over the sides of the embankment; that there was no walk-way for switchmen to walk or stand upon when in the necessary discharge of their duties in coupling and uncoupling cars; and that the road-bed at this place was not sufficiently ballasted or surfaced up.   It is averred that the deceased was employed by defendant as a switchman in the yard at this station, and was engaged on the night of the 12th of January, 1883, in the line of his duty, in uncoupling cars, and that while so engaged one of his feet slipped between the ties and was caught, and before he could extricate it he was run over by defendant's cars and killed.   That the deceased had then been recently employed by defendant and was ignorant of the dangerous and defective construction of the embankment, road-bed and tracks on which he was engaged at the time he was killed, and that his death was the result of the negligence

22–48

of defendant in constructing its road-bed and tracks in the manner stated.

On a trial in the circuit court, plaintiff recovered a judgment for $3500, and defendant appealed to this court.

1. EVI-
DENCE:
*Res gestæ.* It is first insisted that the circuit court erred in admitting evidence of the declarations of the deceased as to the manner in which he was injured. Thomas Leverett, a brother of the deceased, testified that he heard a noise on the railroad and immediately went over and found the deceased under the car, lying partly on the rails, between the track, trying to get out, but could not do so, being unable to move his legs; and he asked him how he was caught, and that deceased told him he had stepped in between the cars to uncouple them; that the pin was tight, and he stepped out and signaled the engineer to back up to loosen the pin, and that he then stepped in between the cars to uncouple them, and as he did so, he stepped between the ties and his feet slipped, and before he could recover, his foot was caught against the tie by the breakbeam and he was thrown down. This statement was made by the deceased while he was under the car and in the condition found by his brother.

Appellant insists that this statement was incompetent evidence, because it was not a part of the *res gestæ.*

Wharton says: "The *res gestæ* may be defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be the necessary incidents of the litigated act; necessary, in this sense, that

they are part of the immediate preparations for, or emanations of, such act, and are not produced by the calculated policy of the actors. In other words, they must stand in immediate causal relation to the act—a relation not broken by the interposition of voluntary individual wariness, seeking to manufacture evidence for itself. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act.  *  *  *  Therefore, declarations which are the immediate accompaniments of an act are admissible as a part of the *res gestæ;* remembering that immediateness is tested by closeness, not of time, but by causal relation as just explained." *Wharton on Evidence, secs. 258, 267,* and authorities cited.

In *Clinton v. Estes, 20 Ark., 225,* it is said: "It may be difficult to determine at all times, when declarations shall be received as a part of the *res gestæ.* But when they explain and illustrate it, they are clearly admissible. Mere narratives of past events, having no necessary connection with the act done, would not tend to explain it. But the declaration may properly refer to a past event as the true reason of the present conduct."

In *Carr v. The State, 43 Ark., 102,* in speaking of what declarations constitute a part of the *res gestæ,* the court said: "Nor need any such declarations be strictly coincident as to time, if they are generated by an excited feeling which extends without break or let down from the moment of the event they illustrate. But they must stand in immediate causal relation to the act, and become part either of the action immediately preceding it, or of the action which it immediately precedes." Again, in *Flynn v. State, ib., 292,* it is said: "It often becomes difficult to determine when declarations shall be received

as part of the *res gestæ*. In cases like this, words uttered during the continuance of the main action, or so soon thereafter as to preclude the hypothesis of concoction or premeditation, whether by the active or passive party, become a part of the transaction itself, and if they are relevant, may be proved as any other fact, without calling the party who uttered them."

In *Commonwealth v. Hackett, 2 Allen, 136,* upon a trial for murder, a witness testified that at the moment the fatal stabs were given he heard the victim cry out: "I am stabbed," and he at once went to him and reached him within twenty seconds after that, and then heard him say: "I am stabbed—I am gone—Dave Hackett has stabbed me." This evidence was held competent as a part of the *res gestæ*. Chief Justice Bigelow, for the court, said: "If it was a narrative statement, wholly unconnected with any transaction or principal fact, it would be clearly inadmissible. But such was not its character. It was uttered immediately after the alleged homicidal act, in the hearing of a person who was present when the mortal stroke was given, who heard the first words uttered by the deceased, and who went to him after so brief an interval of time that the declaration or exclamation of the deceased may fairly be deemed a part of the same sentence as that which followed instantly after the stab with the knife was inflicted. It was not, therefore, an abstract or narrative statement of a past occurrence, depending for its force and effect solely on the credit of the deceased, unsupported by any principal fact, and receiving no credit or significance from the accompanying circumstances. But it was an exclamation or statement contemporary with the main transaction, forming a natural and material part of it, and competent as being original evidence in the nature of *res gestæ*." Again, the learned judge said: " The true test

of the competency of the evidence is not, as was argued by the counsel for the defendants, that the declaration was made after the act was done, and in the absence of the defendant. These are important circumstances, and * * * if they stood alone, quite decisive. But they are outweighed by the other facts in proof, from which it appears that they were uttered after the lapse of so brief an interval, and in such connection with the principal transaction as to form a legitimate part of it, and to receive credit and support as one of the circumstances which accompanies and illustrates the main fact which was the subject of inquiry before the jury."

In the case of *Hanover R. R. Co. v. Coyle, 55 Penn. St., 402,* where a peddler's wagon was struck and the peddler injured by the negligence of the engineer, the latter's declaration, made after the infliction of the injury, was admitted as a part of the transaction itself, the court saying: " We cannot say that the declaration was no part of the *res gestæ.* It was made at the time in view of the goods strewn along the road by the breaking up of the boxes, and seems to have grown directly out of and immediately after the happening of the fact. The negligence complained of being that of the engineer himself, we cannot say that his declarations, made upon the spot at the time, and in view of the effects of his conduct, are not evidence against the company as a part of the very transaction itself."

In the case of *Elkins v. McKean, 79 Penn. St., 493,* the plaintiff sued the defendant for damages caused by oil, manufactured and sold by him to plaintiff's husband, exploding while the husband was using it in a lamp, and catching fire and burning the husband to death. The court held what the husband said as to the cause of the accident when found enveloped in the flames, or within a

few minutes afterwards, was clearly competent evidence as a part of the *res gestæ.*

In *Cosey v. N. Y. C. & H. R. R. Co.*, *78 N. Y., 518*, the plaintiff sued for damages resulting from the death of a child who had been run over and killed by the defendant's cars. On the trial a police officer who went to the place of the accident immediately after the child was killed, and found the child under the wheels of the car, was permitted as a witness for the plaintiff to state what the engineer in charge of the engine said and did in extricating the body of the child from under the wheels of the car. The court held the statements of the engineer were admissible as a part of the *res gestæ.* *Waldele v. N. Y. C. & H. R. R. Co.*, *95 N. Y., 284.*

*McLeod v. Ginthers, admr.*, *80 Ky., 399*, was a suit for damages resulting from the willful neglect of appellant's servants in sending dispatches to two conductors of trains which were to run on the same day over the same part of defendant's road. The dispatches were alike and ambiguous and construed differently by the two conductors. The result was a collision of trains and the death of Ginther, plaintiff's intestate, who was an engineer on one of the trains. Fish, the conductor on the same train, within a few seconds after the casualty, remarked to the engineer of the other train : " I had until 10:10 to make Beards." It was held by the court that it was important to show what Fish and Ginther thought of the meaning of the dispatch while they were acting under it, as the negligence in this case consisted of the wording of the dispatch so as to mislead them, and that the declaration of Fish having been made within a few seconds after the acccident in view of the wrecked trains and amidst the search for persons whose fate was then unknown, and

while Ginther, who lived but thirty minutes, was dying from the injuries he had received, was admissible for that purpose as a part of the *res gestæ*.  The court said:  " He had no time to contrive or devise a falsehood by which to exonerate himself from blame, and his declaration was so connected with the circumstances then surrounding him, and which form a part of this case, as to give it importance in determining the fact that he and the engineer had run the engine in the honest belief that they had until ten minutes after ten o'clock to reach Beards station. *  *  *  If we ignore the credit to which Fish may have been entitled as a truthful man, his declaration made under the circumstances impresses the mind with confidence in its truth, and is entitled to be given its weight as any other fact going to make up the transaction."

The statement of Leverett was made immediately after he was run over, and while the wrong complained of was incomplete, he being still under the car, and was a part of the *res gestæ*, and fairly go to explain the cause of the condition in which he was at the time it was made.  It was an emanation of the act in question, and so connected with the cause of his injuries as to preclude any idea that it was the product of calculated policy.  Aside from any credit due Leverett for veracity, the circumstances immediately preceding and connected with his statement, impress the mind with confidence in its truth.  It was competent evidence.

It is next urged that the trial court erred in admitting evidence as to the dependence of plaintiff, Sallie L. Leverett, on the deceased for maintenance and support.  The proof was, the deceased was her son ; that he was about twenty-three years old at the time he was killed ; and that he had never been married, and that he left a mother, brothers and a sister, but no father, surviving him.

2. DAMAGES To parent from death of son. Evidence of parent's poverty.

The evidence objected to was, that plaintiff was poor and deceased lived with and supported her; and that she was dependent on him for support and maintenance. This evidence was admitted by the court over the objection of defendant.

In actions of this character the statute says: "The jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person." Under the statute, the plaintiff being next of kin of the deceased, had a right to show the pecuniary damage suffered by her by reason of his death. The effect and object of the evidence objected to was to show she had suffered a pecuniary damage by the death of her son, and for that purpose it was admissible. *Ewen v. Chicago & Northern Railway Co.*, *38 Wis.*, *622; Barley v. Chicago & Alton R. R. Co.*, *4 Biss.*, *434; Cook v. Clay Street Hill R. R. Co.*, *60 Cal.*, *609; Opsahl v. Judd*, *30 Minn.*, *126.*

In instructing the jury the court told them, if they found for the plaintiff, they should assess her damages at whatever sum they believed would compensate her for the pecuniary loss she had sustained; and that the law prescribes no rule for the measurement of damages, except that the jury should give such damages as they should deem a fair and just compensation with reference to the pecuniary injuries resulting from the death of plaintiff's intestate to his next of kin. The damages allowed by the jury were reasonable, and it does not appear that appellant was prejudiced, or could have been prejudiced, by the evidence objected to under the instructions of the court.

3. SAME: Duty of company to employe.     It is contended by the appellant that the first, second, third and eighth instructions given by the court to the jury, at the instance of the plaintiff, are erroneous. The

instructions informed the jury that when appellant employed plaintiff's intestate to work as a switchman in its yards at Arkansas City, it assumed a duty to him to construct and maintain its road-bed and tracks in a reasonably safe condition, so as not to unnecessarily enhance the dangers attending upon the employment; that he assumed the natural risks of his employment, but did not assume the risks arising from the negligence of the appellant in constructing a defective road-bed or track; and that if the injuries received by plaintiff's intestate were caused by the defective condition of appellant's road-bed or track, plaintiff was entitled to recover such pecuniary damages as plaintiff sustained by the death of her son, unless the injuries were the result of the contributory negligence of her intestate. In this connection the court further instructed the jury, that if plaintiff's intestate entered and continued in the employment of defendant, knowing the dangerous condition of the road-bed, plaintiff was not entitled to recover for an injury resulting from the condition of the road bed; and that if the injury received by him occurred on account of the steep banks of the road-bed, or on account of the lack of ballasting on the track, plaintiff could not recover, if he knew this was the condition of the road-bed at and before the time of the injury; and that, if at the point he was injured, the road-bed was in a defective and dangerous condition, and he knew it, plaintiff could not recover for an injury occasioned by such defective road bed.

Construing these instructions together, appellant was not prejudiced by any of them. In employing the deceased, the appellant assumed the duty of exercising reasonable care and prudence to provide him a safe place, and tools to exercise the employment, and to maintain the place and tools in a reasonably safe

condition, during the time for which he was employed; and the deceased assumed the risks and hazards which ordinarily attend or are incident to the service he was engaged to perform. The negligence of appellant to supply a safe road-bed, or place and tools for deceased, was not a hazard and risk usually or necessarily attendant upon or incident to the performance of his contract; nor was it one which the deceased, in legal contemplation, is presumed to have assumed, for the obvious reason that he was to use such road-bed, place and tools as were to be provided by appellant, and had and was to have nothing to do with constructing the road bed and place, and purchasing the tools, or with the preservation or maintenance of such road-bed and tools in suitable condition after they were supplied. This risk is not within the contract of service. If it was, appellant would have been relieved of all pecuniary responsibility for failing to perform the obligations he had assumed. Such a doctrine would be subversive of all just ideas of the obligations arising out of such contracts of service, and would withdraw all protection from such employes. A doctrine that leads to such results is contrary to reason, and unworthy the sanction of any court. *St. L., I. M. & S. Ry. v. Higgins, 44 Ark., 300; Davis v. Central Vermont R. Co, 11 Am. & Eng. R R. cases, 175; Missouri Pacif. Ry. Co. v. Lyda, ib., 190; Texas-Mexican Ry. Co. v. Whitmore, ib., 199; Galveston, etc., R. R., v. Lempe, ib., 201; Atchison, Topeka & Santa Fe R. R. Co. v. Holt, ib., 211; same v. Moore, ib., 247, 252; Brown v. Atchison, Topeka & Santa Fe R. R. Co., 15 ib., 271; Elmer v. Locke, 135 Mass., 575; Pierce on Railroads, 370; Hough v. Railway Co., 100 U. S., 213.*

While there was an implied contract between the appellant and the deceased, that the former should furnish and provide for deceased a safe place and road-bed in and

on which to perform the labors required of him, yet the failure of appellant in that regard furnished no excuse for the conduct of the deceased, if he voluntarily and knowingly incurred the risks and dangers of performing the labors of his employment on a defective and dangerous road-bed. If he had, at and before he was injured, full knowledge of the dangerous character and defects of the road-bed, or place on and in which he was required to work, he had the right to decline to work, or require that the road-bed or place should first be made safe; but if he did not, and with this knowledge entered upon the work, he assumed the risk and should bear the consequences. *L. R. & Ft. S. R. R. Co. v. Duffey, 35 Ark., 613; Fones v. Phillips, 39 Ark., 36; Gibson v. Erie Ry. Co., 63 N. Y., 452; Woods' Master and Servant, secs. 335, 372; Pierce on Railroads, p. 379.*

A servant is not required to inspect the appliances of the business in which he is employed, to see whether or not there are latent defects that render their use more than ordinarily hazardous, but is only required to take notice of such defects or hazards as are obvious to the senses. The fact that he might have known of defects, or that he had the means and opportunity of knowing of them, will not preclude him from a recovery unless he did in fact know of them, or in the exercise of ordinary care ought to have known of them. He is not bound to make an examination to find defects. There is no such legal obligation imposed upon him. That is the duty of the master. The servant is not bound to search for dangers, except those risks that are patent to ordinary observation; he has a right to rely upon the judgment and discretion of his master, and that he will fully perform his duty toward him. *Ft. Wayne, Jackson & Saginaw R. R. Co. v. Gildersleave, 33 Mich., 133; Hughes v. Winna & St. Peter R. R. Co.,*

4. MASTER AND SERVANT: Relative duty as to tools, etc.

*27 Minn., 137 ; Reber v. Tower, 11 Mo. App., 203 ; Woods' Master and Servant, sec. 376,* and authorities cited.

5. **Duty of employe as to rules of the company.** The circuit court instructed the jury that an employe is not bound by a rule of the company not brought to his attention, or which is habitually violated with the knowledge of his superior officers, and without any effort on their part to enforce it, or where the usage and practice of the company would tend to mislead him in the violation of the rule. Appellant insists that this instruction is erroneous ; but we see no error in it. *Fay v. Minneapolis & St. L. Ry. Co., 11 Am. & Eng. R. R. Cases, 193.*

Appellant asked the court below to instruct the jury to the effect: That if the defects in the road-bed where Leverett was thrown down and mortally injured by its cars were easily and readily seen, and Leverett had been accustomed to working there, and in attempting to uncouple cars, while in motion, received the injuries which caused his death, plaintiff was not entitled to recover. And the court refused to give the instruction. Appellant. insists that the court erred in so doing.

Contributory negligence is a matter of defense. It is not presumed, but must be proved, and the burden of proving it rests on defendant. *Hough v. Ry. Co., 100 U. S., 225 ; Burlington, Cedar Rapids & Northern R. R. Co. v. Coats, 15 Am. & Eng. R. R. Cases, 265.*

We have failed to find, and appellant has not called our attention to any evidence which would have made the instructions asked for by it, and refused by the court, applicable or appropriate. There was no evidence, so far as we have discovered, to prove that the deceased, before he was hurt, knew or ought to have known of the condition of the track where he was fatally injured. There was evidence tending to prove that he was employed to work, and had been working, in a part of appellant's yard at Arkan-

sas City, where the tracks and yard were in a good condition. The first time we have any evidence of his working on the road where he was killed, or his having been there, was the night and time he was killed. It was then dark, cloudy, and had been raining. He was called to fill the place of an absent employe, and while attempting to uncouple a car, at half-past 4 o'clock in the morning, was run over by the cars and so injured that he died within two or three days thereafter. The evidence does not show that the defects which led to his injury were patent to ordinary observation, at the time and under the circumstances he was hurt, it being in the night and dark and cloudy; and we do not feel at liberty to indulge in the presumption that they were. *Brown v. A. T. & S. F. R. R. Co., supra.* We find no error in the proceedings of the court below prejudicial to appellant. And the judgment is affirmed.